This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38121**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**AMANDA ACOSTA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Jarod K. Hofacket, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Amanda Acosta appeals her convictions for possession of a controlled substance (methamphetamine), pursuant to NMSA 1978, Section 30-31-23(E) (2011, amended 2021),[1] and possession of drug paraphernalia, pursuant to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019). Defendant argues (1) the arresting officer's search of her backpack was illegal because it was neither a valid inventory

---

[1]All references to Section 30-31-23 in this opinion are the to the 2011 version of this statute.

search nor a valid search incident to arrest; and (2) neither of her convictions are supported by sufficient evidence. We reverse.

## BACKGROUND

**{2}** The parties agree the following facts were presented at the hearing on the motion to suppress. Officer Spurgeon was on routine patrol when he came into contact with Defendant, who was wearing a backpack. He knew Defendant had a warrant for her arrest, and confirmed the warrant was active. The warrant was for an alleged aggravated battery. After confirming the warrant, Officer Spurgeon ordered Defendant to remove her backpack, put her in handcuffs with her hands behind her back, and arrested her. Defendant was then placed in the backseat of his vehicle, with the window slightly rolled down.

**{3}** Defendant's friends arrived at the scene, and Defendant asked Officer Spurgeon to give her friends her backpack. Before turning the backpack over to Defendant's friends, Officer Spurgeon searched the backpack and found needles and a clear plastic container that had cotton swabs soaked in a clear substance. The substance tested positive for methamphetamine. Once the search was done, Officer Spurgeon seized the needles and plastic container for evidence. He then handed the backpack to Defendant's friends.

**{4}** Defendant was later charged by criminal information with possession of a controlled substance and possession of drug paraphernalia. Defendant moved to suppress the evidence collected from her backpack, arguing the search was an invalid search incident to arrest. After a hearing on the motion where the State argued the search was a valid search incident to arrest or a valid inventory search, the district court concluded the search was a valid inventory search and denied the motion to suppress. The parties proceeded to trial, and Defendant was convicted of both charges.

## DISCUSSION

### I. The Warrantless Search of Defendant's Backpack Was Invalid

**{5}** Defendant argues that (1) Officer Spurgeon's search of her backpack was an invalid inventory search under the Fourth Amendment to the United States Constitution; and (2) the search was also not a valid search incident to arrest under the Fourth Amendment.

**{6}** When reviewing a district court's denial of a motion to suppress, we consider whether its findings of fact are supported by substantial evidence, *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171, viewing the evidence in the light most favorable to the prevailing party. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. We then consider the district court's legal conclusions de novo. *Leyba*, 1997-NMCA-023, ¶ 8.

**{7}** Under the Fourth Amendment, searches and seizures must be reasonable. *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. "Warrantless seizures are presumed to be unreasonable and the [s]tate bears the burden of proving reasonableness." *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted). In order to prove that a warrantless search is reasonable, the State has the burden of showing the search was justified by an exception to the warrant requirement. *State v. Baldonado*, 1992-NMCA-140, ¶ 19, 115 N.M. 106, 847 P.2d 751. "Recognized exceptions to the warrant requirement include exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view." *Weidner*, 2007-NMCA-063, ¶ 6. We conclude that Officer Spurgeon's search of Defendant's backpack did not meet the requirements of either an inventory search or a search incident to arrest.

## A.    The Search of Defendant's Backpack Was Not a Valid Inventory Search

**{8}** We begin by addressing the district court's determination that the search was a valid inventory search. In *State v. Davis*, our Supreme Court reaffirmed that a valid inventory search requires that "(1) the police have control or custody of the object of the search; (2) the inventory search is conducted in conformity with established police regulations; and (3) the search is reasonable." 2018-NMSC-001, ¶ 12, 408 P.3d 576.

**{9}** We start with the requirement that police have custody or control of the object of the search. The relevant question before us is "whether there is a reasonable nexus between the arrest and the seizure of the object to be searched." *Id.* ¶¶ 14-15. If a defendant "possesses" an object at the time of an arrest, "then a reasonable nexus exist[s] between the arrest and the seizure and inventory search of the [object]." *Id.* ¶ 16. The State argues, consistent with the district court's order, that because Defendant was wearing the backpack and the arresting officer had to remove the backpack so he could arrest her, the custody or control requirement was satisfied.

**{10}** However, our Supreme Court in *Davis* determined that "a defendant 'possesses' any object that the defendant loses control over as a consequence of arrest *and* where that loss of control gives rise to the possibility that the object might be lost, stolen, or destroyed and the police potentially held liable for the loss, theft, or destruction." *Id.* ¶ 18 (emphasis added); *see also State v. Ontiveros*, 2021-NMCA-___, ¶ 14, ___ P.3d ___ (No. A-1-CA-37870, Dec. 20, 2021) (construing *Davis* to require both the loss of control and the possibility that the object might be lost, stolen, or destroyed and the police potentially held liable for the same in order for a defendant to possess the object). To address the possession requirement, we must determine "whether the object is made unsecure by the arrest." *Davis*, 2018-NMSC-001, ¶ 21.

**{11}** Here, while Defendant lost control of her backpack by virtue of her arrest, the loss of control did not result in the backpack being made unsecure because, before Officer Spurgeon began the search, Defendant asked him to give her backpack to her friends, who were present and willing to take possession of the backpack, and the officer agreed to do so. Although Defendant lost control over her backpack, there was

no possibility that it could be lost, stolen, or destroyed and the police could be held liable for its loss, theft, or destruction considering that it remained in the plain sight of everyone at the scene, the entire incident was recorded by Officer Spurgeon's lapel camera, and he planned to give the backpack to Defendant's friends. *Compare Ontiveros*, 2021-NMCA-___, ¶¶ 14-15 (holding there was no reasonable nexus between the defendant's arrest and the search of his vehicle that was registered to his grandmother when the vehicle was not made unsecure because it was parked in front of his grandmother's trailer), *with State v. Boswell*, 1991-NMSC-004, ¶¶ 2, 12-13, 111 N.M. 240, 804 P.2d 1059 (holding there was a reasonable nexus between the defendant's arrest and seizure of his items for an inventory search when he was arrested at a grocery store, his wallet was left at the store, the arresting officer insisted upon returning to the store to retrieve the wallet despite the defendant offering to have a friend pick it up, and the officer searched the wallet and discovered drugs, noting that "[t]his is not a situation where the property could have been safely left where it was, nor was it a situation where custody of the property could have been safely and immediately entrusted to a friend or placed in a safe place" (footnote omitted)). We conclude that the police did not have lawful control or custody of Defendant's backpack and, as a result, did not meet the first requirement of the *Davis* test. *See* 2018-NMSC-001, ¶ 12. In light of this holding, we need not consider the other requirements of a valid inventory search, and conclude that the search of the backpack was not a valid inventory search. We next turn to the State's claim that the search was a valid search incident to arrest.

**B.    The Search of Defendant's Backpack Was Not a Valid Search Incident to Arrest**

**{12}**    To meet its burden that a warrantless search is justified as a search incident to arrest, the State must prove "that the search occurs as a contemporaneous incident to the lawful arrest of the defendant and is confined to the area within the defendant's immediate control." *Weidner*, 2007-NMCA-063, ¶ 18 (internal quotation marks and citation omitted). The search incident to arrest exception is considered reasonable "because of the practical need to prevent the arrestee from destroying evidence or obtaining access to weapons or instruments of escape, without any requirement of specific probable cause to believe weapons or evidence are present in a particular situation." *Rowell*, 2008-NMSC-041, ¶ 13. The scope of a search incident to arrest is "defined and limited by its supporting justification." *Id.* ¶ 14 (citing *Chimel v. California*, 395 U.S. 752 (1969)). The State argues that because Defendant was wearing the backpack at the time of her arrest, the backpack was in her immediate control, thus the search was a valid search incident to arrest. We disagree.

**{13}**    Although we acknowledge that there need not be a "showing that an actual threat exists in a particular case," *id.* ¶ 25 n.1, we cannot ignore the spatial requirement of the search. The area of concern is "an area into which an arrestee might reach." *State v. Pittman*, 2006-NMCA-006, ¶ 8, 139 N.M. 29, 127 P.3d 1116 (internal quotation marks and citation omitted). The State's argument fails to address that the search occurred after Defendant was handcuffed with her hands behind her back and placed in Officer Spurgeon's vehicle. Officer Spurgeon searched the backpack on the trunk outside of his

police car, and he agreed that Defendant did not have access to the backpack during his search. Because the backpack was not in Defendant's immediate control and she had no ability to gain possession of a weapon or destroy evidence, the search does not meet the search incident to arrest exception to the warrant requirement. *See State v. Martinez*, 1997-NMCA-048, ¶¶ 2-4, 12, 123 N.M. 405, 940 P.2d 1200 (concluding insufficient evidence supported a search incident to arrest when the officer had already validly arrested the defendant in the living room of the home and arresting officers searched a sack in another bedroom because "[n]othing indicated that the sack was within the area from which [the d]efendant might gain possession of a weapon or destructible evidence" (internal quotation marks and citation omitted)).

{14}   The State cites several cases to argue the search of the backpack was a valid search incident to arrest. The cases cited, *State v. Widmer*, 2021-NMCA-003, ¶ 2, 482 P.3d 125, *State v. Paananen*, 2015-NMSC-031, ¶¶ 3-4, 357 P.3d 958, *Utah v. Streif*, 579 U.S. 232, 239-40 (2016), and *State v. Grijalva*, 1973-NMCA-061, ¶ 13, 85 N.M. 127, 509 P.2d 894, are either factually distinct from this case, or did not sufficiently analyze the search incident to arrest exception to be of assistance, and thus are inapplicable to our analysis.

{15}   Officer Spurgeon's search of Defendant's backpack without a warrant is not supported by either exception put forth by the State. Therefore, evidence obtained pursuant to that search should have been suppressed. Because Defendant's convictions were based on the admission of this evidence, we reverse Defendant's convictions.

## II.    Sufficiency of the Evidence

{16}   In her final argument, Defendant claims there is insufficient evidence to support her convictions for possession of methamphetamine and possession of drug paraphernalia. We review Defendant's claims because the principles of double jeopardy bar retrial if Defendant's convictions are not supported by substantial evidence. *See State v. Garcia*, 2019-NMCA-056, ¶ 18, 450 P.3d 418 (citing *State v. Post*, 1989-NMCA-090, ¶ 22, 109 N.M. 177, 783 P.2d 487). In our review, we must consider all the evidence admitted by the district, "including the wrongfully admitted evidence." *Id.*

{17}   "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). Lastly, on appeal, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Sufficiency

of the evidence must be tested against jury instructions because they become law of the case. *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409.

**{18}**    For her possession of methamphetamine conviction, Defendant challenges only the requirement that "[D]efendant knew it was methamphetamine or believed it to be methamphetamine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law." *See* UJI 14-3102(2) NMRA. She argues there was no evidence, testimonial or otherwise, suggesting Defendant knew or believed the container contained methamphetamine.

**{19}**    Defendant was charged pursuant to Section 30-31-23, which requires the State to prove beyond a reasonable doubt that she possessed methamphetamine and Defendant knew the substance was methamphetamine. UJI 14-3102 NMRA. Officer Spurgeon testified that Defendant was verbally and physically resistant when she was placed under arrest, the substance found in the backpack she was wearing was confirmed to be methamphetamine, she admitted the backpack was hers, and the methamphetamine was found in a specific compartment that contained credit cards with her name on them. *See State v. Brietag*, 1989-NMCA-019, ¶ 14, 108 N.M. 368, 772 P.2d 898 ("The presence of drugs in a drawer in a defendant's bedroom, when defendant's papers were also in the drawer, supports an inference that [the] defendant exercised control over the drawer's contents and knew the drugs were present."). Officer Spurgeon testified that Defendant told him the items in the backpack were a friend's or a friend had put them in there. Although Defendant's statement to Officer Spurgeon could support an acquittal, it does not provide a basis for reversal because the jury is free to reject the defendant's version of the facts. *See State v. Howl*, 2016-NMCA-084, ¶ 30, 381 P.3d 684 (holding sufficient evidence existed to uphold a possession of methamphetamine conviction when methamphetamine was found in a cigarette box in the defendant's pocket despite the defendant testifying that someone else handed him the box of cigarettes, which he accepted without inspection).

**{20}**    For her possession of drug paraphernalia conviction, Defendant challenges only the requirement that she "used or intended to use the paraphernalia to ingest, inhale or otherwise introduced into the human body, a controlled substance in violation of the Controlled Substances Act." *See* UJI 14-3107(2) NMRA. She again argues that the record is void of evidence that could uphold her conviction.

**{21}**    Officer Spurgeon testified that he found a hypodermic needle and a clear plastic container that contained cotton swabs in the same compartment of Defendant's backpack in which he found the methamphetamine. He explained that cotton balls are typically used to filter methamphetamine to remove particles before it goes into the needle. The jury was free to draw inferences regarding the facts necessary to support a conviction, and here, the jury could infer that Defendant intended to use the drug paraphernalia she possessed to ingest the methamphetamine she possessed. *See State v. Stefani*, 2006-NMCA-073, ¶ 39, 139 N.M. 719, 137 P.3d 659 (concluding the jury was free to infer that the defendant was in possession of drug paraphernalia when

a meth lab existed in the defendant's trailer where he was present and the defendant hid from police).

**{22}** As substantial evidence supports both of Defendant's convictions, Defendant may be retried on both charges.

**CONCLUSION**

**{23}** For the foregoing reasons, we reverse the denial of Defendant's motion to suppress and remand for further proceedings.

**{24} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**GERALD E. BACA, Judge**